**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

DERRICK Z. SMITH,

                              Civil No. 20-1163 (JRT/DTS)

                Plaintiff,

v.

                            **MEMORANDUM OPINION AND ORDER**
                            **ADOPTING THE MAGISTRATE JUDGE'S**
                            **REPORT AND RECOMMENDATION**

GUY BOSCH, *Warden of MCF – Stillwater*,

                Defendant.

---

Joseph T. Dixon, III, Natasha T. Robinson, and William T. Wheeler, **FREDRIKSON & BYRON, PA**, 60 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for petitioner.

Adam E. Petras, **HENNEPIN COUNTY ATTORNEY'S OFFICE**, 300 South Sixth Street, Suite C-2000, Minneapolis, MN 55487; Edwin W. Stockmeyer, III and Matthew Frank, **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101, for respondent.

Petitioner Derrick Smith brings this Petition for a Writ of Habeas Corpus against Guy Bosch, the Warden at MCF-Stillwater, arguing that the Minnesota Supreme Court's decision denying him a new trial was contrary to clearly established federal law. Smith was convicted of aiding and abetting the murder of Richard Ambers. At trial, the prosecution relied on the testimony of Ayan Wahab, one of Smith's co-conspirators. However, days before the trial, Smith's counsel learned that the prosecution was in possession of evidence that could undermine Wahab's testimony, mostly in the form of

jail house call recordings.  Smith moved for a continuance, but the state trial court denied the request.  The Minnesota Supreme Court affirmed the trial court's decision.

Upon review of the suppressed evidence, Magistrate Judge David Schultz found that the evidence was in fact favorable to Smith and subject to *Brady v. Maryland*.  The prosecution thus violated its duty to disclose the evidence.  However, in its Report and Recommendation ("R&R"), the Magistrate Judge concluded that the Minnesota Supreme Court's decision was not contrary to established federal law because the evidence was not material and recommended that the Court deny Smith's petition.

Because the suppressed evidence does not suggest that Wahab had a propensity for untruthfulness, does not demonstrate inconsistent statements, and does not suggest an improper motive or bias, the Court finds it is of low impeachment value, and therefore not material.  The Court concludes the suppressed evidence does not place the judgment of the jury in doubt and will therefore adopt the Magistrate Judge's R&R and deny Smith's Petition.

**BACKGROUND**

**I.      FACTUAL BACKGROUND**

Derrick Smith was convicted of aiding and abetting first and second-degree murder.  *State v. Smith*, 932 N.W.2d 257, 263 (Minn. 2019).  He is serving a life sentence with the possibility of release.  *Id.* at 264.  In late 2016, Smith allegedly devised a plan to rob Richard Ambers with three co-conspirators: Ayan Wahab, Tyler Patterson, and Brandy

Jaques. *Id.* at 262. The plan went awry, and Ambers was killed by one of Smith's associates. *Id.* at 263.

Ambers's body was discovered around 4:43 a.m. *Id.* Because of a lack of physical evidence and witnesses, the police reconstructed Ambers's movements from 2:00 a.m., when he had last spoken with his wife. *Id.* at 262. Using Ambers's phone records, the police contacted someone who said he met with Ambers at a Super America gas station in Brooklyn Center. *Id.* Surveillance from the gas station appeared to show Ambers meeting with the contact at 3:15 a.m., and then Ambers talking with Smith, who had arrived with the co-conspirators. *Id.* The video then showed Ambers leaving with Wahab, who was a sex worker allegedly working for Smith. *Id.*

As part of her plea agreement, Wahab provided the following details. Ambers and Wahab drove to the home of Ambers's friend and then to Jaques's house, where Wahab lived. *Id*. Wahab went inside the house, where Smith and Jaques were waiting. *Id.* Wahab testified that Smith was angry at her for returning without any drugs or money. *Id.* Smith then told Wahab to go back outside; Wahab left the house and got into the car with Ambers. *Id.* 262–63. Patterson then appeared, opened the passenger door, and pulled Wahab out of the car. *Id.* at 263. As Wahab was walking towards the house, she heard three gunshots, but she did not look back or see who fired the gun. *Id.* While the prosecution does not claim Smith fired the gun, it argued that he was the ultimate "shot

caller" and leader in the operation.  (Resp. Order to Show Cause, Ex. 2, at 50, June 16, 2020, Docket No. 17-2.)

In June 2017, six months prior to trial, Smith requested the recordings of several calls made from jail in December 2016 and January 2017.  *Smith*, 932 N.W.2d at 263. Prosecutors did not turn over the recordings until mid-December 2017 and Smith's attorney did not discover that the calls were available until December 27, 2017—just six days prior to trial.  *Id.*  The disclosure contained approximately seventy-five hours of recordings.  *Id.*  On the first day of trial, Smith motioned for a continuance to review the recordings.  *Id.*  The trial court denied the motion and instructed Smith's attorney to renew the motion after jury selection if he found any exculpatory evidence in the recordings. (Decl. of Sebastian Mesa-White ¶ 5, May 12, 2021, Docket No. 35.)  The next week, after reviewing roughly eight hours of the recordings, Smith's attorney renewed the motion.  (*Id.* ¶ 6.)  The trial court again denied the motion and Smith was convicted. *Smith*, 932 N.W.2d at 263–64.

Smith appealed his conviction to the Minnesota Supreme Court, arguing, among other things, that the trial court abused its discretion in denying his motion for a continuance to review the recordings.  (Resp. Order to Show Cause, Ex. 2, at 13.)  Smith alleged the "calls contained *Brady* material" that "would have undercut the State's theory that Smith aided and abetted [his co-conspirator] in shooting Ambers."  (*Id.* at 47, 50.)  In particular, Smith pointed to a call in which a co-conspirator suggested that Patterson was

the one leading the pack.  (*Id.* at 24.)  The Minnesota Supreme Court affirmed the trial

court's decision to deny the motion for a continuance.  *Smith*, 932 N.W.2d at 272.

## II.      PROCEDURAL HISTORY

Smith petitioned the Court for a Writ of Habeas Corpus arguing that the

prosecution's late disclosure of the recordings constituted a denial of access to

exculpatory or favorable evidence in violation of the rule established in *Brady v.*

*Maryland*, 373 U.S. 83 (1963).  (Suppl. Mem. Supp. Pet., May 12, 2021, Docket No. 34.)

The State asserted that Smith did not adequately raise a *Brady* claim in state court and

therefore the issue was not preserved for review at the federal level.  (Suppl. Resp. Mem.

at 1, June 25, 2021, Docket No. 41.)   The Magistrate Judge determined that Smith

presented his *Brady* claim to the Minnesota Supreme Court, but that the record was

insufficient to support a decision on the merits of the Petition.  (Magistrate Judge's Order

at 12–14, Sept. 17, 2021, Docket No. 42.)  The Magistrate Judge ordered the parties to

submit additional documents, evidence, and supplemental briefing.  (*Id.* at 14.)  The Court

affirmed the Magistrate Judge's Order after agreeing that Smith had properly exhausted

his claim.  (Mem. Op. and Order Affirming Magistrate Judge's Order at 7–9, 12, Aug. 2,

2022, Docket No. 59.)

The parties produced the recorded calls, a transcript of Smith's trial, and all the

filings and transcripts related to Smith's motion for continuance at trial.  (R. & R. at 5, June

22, 2023, Docket No. 91.)  The parties also briefed whether (1) the jail calls recording

included *Brady* material; (2) whether Smith was prejudiced by the lack of timely disclosure; and (3), whether the Minnesota Supreme Court's adjudication resulted in a decision that was contrary to—or involved an unreasonable application of—clearly established federal law as determined by the Supreme Court of the United States under 28 U.S.C. § 2254(d)(1).  (*Id.*)

Smith identified recordings that he alleges cast doubts about the testimony provided by Wahab.  (*Id.*)  Neither party challenges the Magistrate Judge's summation of the four calls or Wahab's testimony, so the Court will not repeat them and will adopt the Magistrate Judge's accounting and summary.  (*See id.* at 6–9.)  However, the Court will note that none of the calls involved Wahab: two involved conversations between Jaques and another person, and the other two involved statements by Patterson's girlfriend. (*See id.* at 6.)

After reviewing all of the relevant material and arguments, the Magistrate Judge recommended that the Court deny Smith's petition.  (*Id.* at 23.)  The Magistrate Judge found that evidence favorable to Smith was suppressed but concluded that the suppressed evidence was not material.  (*See generally id.*)

Smith objects only to the Magistrate Judge's conclusion that he did not suffer prejudice from the suppression of evidence.  He argues that this is a "special type of *Brady* case" because his conviction was "based almost exclusively on the testimony of an accomplice."  (Obj. at 4, Aug. 1, 2023, Docket No. 98.)  Because Wahab's testimony was

central to the State's case at trial, Smith argues that the defense relied on the ability to

impeach the accomplice witnesses. (*Id.* at 5.) Smith believes the four calls constituted

"impeachment evidence" and that the Magistrate Judge did not properly weigh their

impact. (*Id.* at 8–9.) The State opposes Smith's objection and does not object to any of

the Magistrate Judge's determinations and recommendations. (*See* Resp. Obj., Aug. 4,

2023, Docket No. 99.)

**DISCUSSION**

## I.   STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may file "specific written objections

to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "The objections

should specify the portions of the magistrate judge's report and recommendation to

which objections are made and provide a basis for those objections." *Mayer v. Walvatne*,

No. 07–1958, 2008 WL 4527774 at *2 (D. Minn. Sept. 28, 2008). For dispositive motions,

the Court reviews de novo a "properly objected to" portion of an R&R. Fed. R. Civ. P.

72(b)(3). When reviewing de novo, the Court will review the case from the start, as if it is

the first court to review and weigh in on the issues. *See Salve Regina College v. Russell*,

499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of appellate

deference is acceptable."). However, de novo review of a magistrate judge's R&R "only

means a district court 'give[s] fresh consideration to those issues to which specific

objection has been made.'"  *United States v. Riesselman*, 708 F. Supp. 2d 797, 807 (N.D.

Iowa 2010) (quoting *United States v. Raddatz*, 447 U.S. 667, 675 (1980)).

## II.   ANALYSIS

The Court reviews Smith's objection de novo because this is a dispositive matter.

Smith's Habeas Petition is reviewed under 28 U.S.C. § 2254.   The Court must first

determine whether the state court judgment resulted in a decision that was "contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  As the Magistrate

Judge noted, the Minnesota Supreme Court did not actually analyze the substance of

Smith's claim.  (*See* R. & R. at 10.)  Therefore, the Court cannot review the state court

decision for an unreasonable application of federal law and must instead determine

whether the decision was contrary to federal law.  (*Id.*)

The Court now turns to the merits of Smith's claim.  Under *Brady*, Smith must prove

that (1) the prosecution suppressed evidence, (2) the evidence was favorable to him, and

(3) the evidence was material to his guilt or punishment.  *Mandacina v. United States*, 328

F.3d 995, 1001 (8th Cir. 2003) (citation omitted).  Smith only objects to the Magistrate

Judge's conclusion that the suppressed evidence was not material.  (*See* Obj. at 1.)

Therefore, the Court will focus on the issue of materiality.

*Brady* held that the prosecution's failure to disclose evidence that is both favorable

to the accused and material either to the accused's guilt or punishment violates due

process.  373 U.S. at 87; *see also Giglio v. U.S.*, 405 U.S. 150, 154–55 (1972) (applying

*Brady* to evidence undermining a witness's credibility).  Materiality is determined "in the

context of the entire record." *United States v. Agurs*, 427 U.S. 97, 112 (1976).  Evidence is

material when there is a "reasonable likelihood it could have affected the judgment of

the jury."  *Wearry v. Cain*, 577 U.S. 385, 392 (2016) (internal quotations omitted) (citing

*Giglio*, 405 U.S. at 154).

The Supreme Court has explained that the "reasonable likelihood" standard "does

not mean that the defendant 'would more likely than not have received a different verdict

with the evidence,' only that the likelihood of a different result is great enough to

'undermine[ ] confidence in the outcome of the trial.'" *Smith v. Cain*, 565 U.S. 73, 75–76

(2012) (alteration in original) (citing *Kyles v. Whitney*, 514 U.S. 419, 434 (1995)).  At the

same time, the "mere possibility that an item of undisclosed information might have

helped the defense, or might have affected the outcome of the trial, does not establish

'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109–110.  Ultimately, this is

a factual question decided by the Court after reviewing the record evidence as a whole.

*See United States v. Dones-Vargas*, 936 F.3d 720, 722 (8th Cir. 2019).

The crux of Smith's position is that Wahab's testimony was the prosecution's

lynchpin and that any evidence that undermines her credibility undermines confidence in

the jury's verdict.  (*See* Obj. at 4–6.)  But as previously explained, the bar is not so low that

the "mere possibility" that any evidence may have hurt Wahab's credibility calls into question the jury's determination.

The Court concludes that none of the recordings sufficiently undermine Wahab's testimony such that the outcome of the trial is in doubt. (*Id.* at 17.) As the Magistrate Judge noted, Wahab's testimony was corroborated by cell-site location information, by the testimony of two other witnesses, and was consistent with the account Wahab provided throughout her own criminal case and Smith's proceeding. (*Id.* at 17–18.) Such corroboration lends credence to the witness that is unlikely to be shaken by the kind of evidence at issue in this case. Ultimately, the impeachment value of the recordings "was not so devastating as to undermine the entire prosecution." *Dones-Vargas*, 936 F.3d at 723.

Smith places great emphasis on *Wearry* and *Giglio*, cases in which the Supreme Court found *Brady* violations based on the suppression of evidence undermining key prosecution witnesses. Smith's reliance is misplaced. In each of those cases, the uncovered evidence seriously undermined the truthfulness of the key witness. *Wearry* involved inconsistent statements by the witness. 577 U.S. at 387. *Giglio* involved evidence strongly suggesting bias and an improper motive because the witness had been promised he would not be prosecuted in exchange for his testimony. 405 U.S. at 153. None of the calls at issue suggest either that Wahab made inconsistent statements or that she had an improver motive.

Smith contends that one of the jail telephone recordings shows that Wahab's testimony "does not add up." (Obj. at 6.) In the call, Jaques explains that Wahab would never have entered the house because "she had been beaten up there on a previous occasion" and that Smith was inside the house when Wahab heard gunshots outside. (Declaration of Sebastian Mesa-White ("Mesa-White Decl.") ¶ 13, Feb. 10, 2023, Docket No. 81.) In the same call, a woman named Carrie explains that she was inside the house at the time of the murder but did not remember seeing Wahab. (Obj. at 6.) Smith argues that each of these statements undermines Wahab's testimony and credibility as a witness. However, Smith fails to explain how these statements could have led the jury to completely disregard the rest of Wahab's testimony. Jaques's statement relating to what Wahab would or would not do amounts to speculation; and Carrie's assertion that she did not see Wahab at the house accords with Wahab's own testimony that she did not see anyone at the house. (*See* R. & R. at 20, n. 4.)

In a separate recording, Jaques states that Patterson was the leader of the group and was directing people the night of the murder, which Smith argues contradicts Wahab's testimony that Smith was the one in charge. (Mesa-White Decl. ¶ 14.) But the Court finds that the impeachment value of this statement, if any, is very low. Assuming that Jaques's testimony actually contradicts Wahab's, it is not reasonable for the Court to conclude that the jury would have discredited Wahab's testimony because someone else made a conflicting statement.

-11-

The final piece of allegedly impeaching evidence is a recording of Patterson's girlfriend stating that Patterson's van was broken and that the pictures of the van did not look like Patterson's van.   (Mesa-White Decl. ¶ 15.)   Smith argues the recording undermines Wahab's recollection that it was Patterson who drove her in his van to the gas station and that Smith directed her to enter Patterson's van to dispose of the murder weapon.   (Obj. at 6–7.)   But the fact that a van belonging to Patterson was broken and that the person did not recognize the van in the picture do not actually call into question Wahab's testimony regarding Smith's involvement, the key issue in this case.

The Court cannot agree that these recordings, when considering the evidence in the case as a whole, "strongly support the conclusion that Wahab's trial testimony at least regarding Smith was highly unreliable." (Obj. at 7.)   As the Magistrate Judge noted, many aspects of Wahab's testimony were corroborated by other evidence and testimony.   (R. & R. at 17–18.)   Additionally, the jail cell recordings do not resemble anything like the impeachment evidence the Supreme Court has found sufficient to call into question the credibility of the key witness in a case.   The calls did not involve Wahab and did not establish that she had an ulterior motive, bias, or improper motivation.   None of the suppressed evidence calls into question Wahab's propensity for telling the truth.

Finally, Smith's contention that he could have completed additional investigation had he possessed the recordings is largely speculative, and Smith does not show that any additional investigation could have reasonably impacted the jury's verdict.

In sum, the Court concludes the suppressed evidence was not material, and therefore the denial of a continuance at trial was not constitutionally erroneous.  The Court will accordingly deny Smith's Petition for a Writ of Habeas Corpus.

### III.      CERTIFICATE OF APPEALABILITY

Lastly, 28 U.S.C. § 2253(c) dictates that an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding unless a judge issues a Certificate of Appealability ("COA").  A COA should only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2553(c)(3). The Supreme Court has further clarified that a COA is only appropriate if petitioner has shown "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

The Court finds that Smith has not made a substantial showing of the denial of a constitutional right, and that reasonable jurists could not debate whether his petition for habeas corpus should have been resolved in a different manner. The Court will therefore not grant a Certificate of Appealability.

**CONCLUSION**

The Court concludes that although the evidence is marginally favorable to Smith,

the suppression was not prejudicial; therefore, the Minnesota Supreme Court's decision

was not a misapplication of federal law, and Smith's petition is denied.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Smith's objection [Docket No. 98] to the Report and Recommendation is

   **OVERRULED**;

2. The Magistrate Judge's Report and Recommendation [Docket No. 91] is

   **ADOPTED**;

3. Petitioner's Petition for a Writ of Habeas Corpus [Docket No. 1] is **DENIED**;

   and,

4. Petitioner's action is **DISMISSED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 13, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge